**SO ORDERED.**

**SIGNED this 07 day of September, 2010.**



_Dale L. Somers_
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

Opinion designated for print publication and online use
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **In Re:** | |
| **ROBERT JOHN REGAN and** **DIANE PATRICIA REGAN,** | **CASE NO. 08-21546** **CHAPTER 13** |
| **DEBTORS.** | |
| **ROBERT JOHN REGAN and** **DIANE PATRICIA REGAN,** | |
| **PLAINTIFFS,** | |
| **v.** | **ADV. NO. 08-6095** |
| **HSBC BANK (USA),** | |
| **DEFENDANT.** | |

**MEMORANDUM OPINION AND ORDER ON COMPLAINT FOR RESCISSION**
**AND DAMAGES FOR VIOLATION OF THE TILA**

In this adversary case, Debtors Robert and Diane Regan (hereafter "Debtors" or

"Plaintiffs") allege violations of the Truth in Lending Act, 15 U.S.C. § 1601 -1666j

(hereafter "TILA")[1] occurred in connection with their home mortgage loan, entitling them to rescind the transaction almost three years after the closing, and to recover statutory damages and attorney fees. The specific violation alleged is the receipt of one copy, instead of two copies, of the TILA disclosure form (hereafter "TILA Disclosure Statement"), at the closing on their December 6, 2005 home loan transaction with Dream House Mortgage Corporation. Defendant HSBC Bank (USA) (hereafter "HSBC"), the assignee of Debtors' home mortgage loan, contends it has no liability for damages or attorney fees and that Debtors are not entitled to rescind the transaction.

Trial was held on May 11, 2010. Plaintiffs appeared by Kenneth M. Gay, and Defendant appeared by Jill D. Olsen, of the Olsen Law Firm, L.L.C. There were no other appearances. The Court has jurisdiction.[2]

**FINDINGS OF FACT.**

On or about December 6, 2005, Plaintiffs entered into a consumer credit transaction (hereafter "Transaction") with Dream House Mortgage Corporation, a defunct Rhode Island corporation, whereby, as a refinancing of their home loan, they borrowed $644,000 secured by a mortgage on their principal residence, located in Leawood, Kansas

---

[1] Future citations to the TILA in the text shall be to the section of Title 15 only.

[2] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (C), and (K). There is no objection to venue or jurisdiction over the parties.

(hereafter "Property").[3]  The initial closing was held on December 1, 2005, but afterward Debtors received a call that there was a problem, and a second closing would be required. This was held on December 6, 2005.  At the closing, Debtors received the Transaction documents.  They took the documents home, placed them in a folder, and placed the folder in an upstairs file cabinet without reviewing the contents.  Defendant HSBC obtained all rights and obligations of the Transaction through assignment of the promissory note and mortgage.  HSBC's witnesses did not include anyone with knowledge of the circumstances of the closing.

In 2008, Debtors' bankruptcy counsel requested Debtors to bring the Transaction file to him for review.  Debtors for the first time after the closing removed the documents from the file cabinet and brought them to their attorney.  Review of the file revealed one copy of the TILA Disclosure Statement.  This is contrary to the following statement on the TILA Disclosure Statement:  "Each of the undersigned acknowledge[s] receipt of a complete copy of this disclosure," under which the signature of each of the Plaintiffs appears.

Debtors filed for relief under Chapter 13 on June 30, 2008.  On the same day, Debtors, through their attorney, gave notice of rescission pursuant to the TILA because "[t]he disclosures provided to [Debtors] failed to provide the appropriate forms required by the TILA."  The notice stated, "[Y]ou have twenty days after receipt of this notice of rescission to return to my clients all monies paid and to take action necessary or

---

[3] The street address of the property is 12509 Sherwood Drive, Leawood, KS 66209.

3

appropriate to reflect termination of the security interest."  A litigation specialist employed by Wells Fargo, the servicer for HSBC with respect to the Transaction, reviewed the file HSBC received when it was assigned the loan.  She concluded there was no ground for rescission; that, based upon the entire file and particularly on Plaintiffs' signatures on the one copy of the TILA Disclosure Statement in the file, Plaintiffs had received the correct number of copies of the TILA Disclosure Statement.  The Complaint that commenced this proceeding was filed on August 12, 2008.  A letter denying the demand for rescission dated August 15, 2008 was sent to Plaintiffs' counsel, apparently before notice of the Complaint was received.  The Complaint did not specify the particular violation that allegedly gave rise to the right to rescind.  HSBC learned on July 15, 2009, through Debtors' response to Defendant's First Interrogatories, that the basis for rescission was the alleged failure to provide two copies of the TILA Disclosure Statement.

Since the purchase of their home, Debtors have refinanced their loan three times. For the last 10 years, they have been paying interest only.  The Transaction provided for payment of interest only of $3,622.50 per month for the first 120 months and payments of $4,896.74 thereafter.  Debtors were current on their home loan payments when they filed for relief.  Debtors recognize that the home is too big for their needs and wish to sell rather than refinance.  They also recognize they would have difficulty in getting a loan to refinance.

Payments made by Debtors pursuant to the Transaction are:  Closing costs of

4

$13,457.42; interest payments from February 2006 through August 2008 of $112,297.50; late charges of $1,086.78; and other charges of $10.  There is no escrow balance.  The difference between the original loan amount, $644,000, and the sum of all the foregoing payments is $517,148.30.

Debtors allege three claims: (1) Failure to provide two copies of the TILA Disclosure Statement, for which they claim statutory damages and attorney fees; (2) failure to honor their 2008 notice of rescission, for which they claim statutory damages and attorney fees; and (3) the right to rescind for which they seek an order of rescission and attorney fees.  As to their tender obligation upon rescission, Debtors request that any finance charge or other fees they have paid be credited to the principle balance of the loan and that they be given a reasonable time of at least one year to make a lump-sum payment.

HSBC opposes Debtors' claims.  It asserts that Debtors cannot credibly rebut the presumption that they were provided two copies of the TILA Disclosure Statement, that recovery for all claims except rescission is barred by §§ 1640(a) and 1641(a), and that even if the grounds for rescission exist, the equities lie with HSBC, as an assignee and innocent purchaser of a loan with no notice or ability to determine the alleged TILA violation from information in its possession.

## ANALYSIS AND CONCLUSIONS OF LAW.

### A.  THE TILA AND THE RIGHT TO RESCIND.

A purpose of the TILA is "to assure a meaningful disclosure of credit terms so that

5

the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit."[4]  To accomplish this purpose, generally the TILA requires disclosure of credit terms in a form that is understandable to the consumer. Remedies for violations include actual and statutory damages.  In addition, when the transaction, other than for the purchase of the home, involves taking of the consumer's principle dwelling as collateral, the TILA grants the consumer a right to rescind the transaction.[5]  It is an absolute right for three days, "but it may last for up to three years, if the homeowner does not sell the home and if important TIL disclosures were not provided correctly at the time of the original credit transaction."[6]  There are two categories of trigger events which extend the time to rescind:  (1) Failure to provide *each* consumer with an interest in the property with one copy of the TILA disclosure form with all material information correctly disclosed; and (2) failure to give *each* consumer *two* copies of the notice of the right to cancel, one copy to keep and one to use if the option to rescind is exercised.[7]

When a lender has violated TILA provisions, courts impose strict liability regardless of the nature of the violation or the creditor's intent.[8]  A court has no discretion

---

[4] 15 U.S.C. § 1601(a).

[5] 15 U.S.C. § 1635(a).

[6] Elizabeth Renuart and Kathleen Keest, *Truth in Lending* § 6.1 (Nat'l Consumer Law Center 6th Ed. 2007) (hereafter *Truth in Lending)*, citing 15 U.S.C. §§ 1635(c) and (f).

[7] *Id.* at § 6.4.3.2, citing 15 U.S.C. § 1635(a) and 12 C.F.R. §§ 226.5(b), 226.15(b), and 226.23(b).

[8] *Cooper v. First Gov't Mortgage and Investors Corp.*, 238 F. Supp.2d 50, 63 (D.D.C. 2002).

6

to decline rescission because of the equities of the case.  In an action against the original creditor, a consumer may recover statutory damages for a disclosure violation and for a failure to adhere to the procedures and standards for rescinding the transaction, without a showing of actual damage.[9]  Costs and attorney fees are recoverable in such rescission cases against the original lender.[10]

**B.  DEBTORS HAVE ESTABLISHED A TRIGGER EVENT FOR RESCISSION BY OVERCOMING THE PRESUMPTION THAT THEY RECEIVED TWO COPIES OF THE TILA DISCLOSURE STATEMENT.**

The copy of the TILA Disclosure Statement received by Debtors at closing bears Debtors' signatures and the following statement immediately above the signatures:  "Each of the undersigned acknowledges receipt of a complete copy of this disclosure."  The TILA provides that such a written acknowledgment creates a presumption that two copies were received.  Subsection 1635(c) provides:

> **(c)  Rebuttable presumption of delivery of required disclosures**
> Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof.[11]

The burden is on Debtors to rebut this presumption by presenting evidence to the

---

[9] *Truth in Lending* at § 8.6.5.8, citing 15 U.S.C. § 1640(a) and (a)(3).

[10] 15 U.S.C. § 1640(a)(3).

[11] 15 U.S.C. § 1635(c).

7

contrary.[12]

In this case, based upon Plaintiffs' signatures, the presumption arose that the TILA requirement that two copies of the TILA Disclosure Statement be provided was satisfied. However, Plaintiffs rebutted the presumption. Plaintiffs' testimony was credible that they were given the loan documents at the closing, that they placed the loan documents in a folder, that they placed the folder in a file cabinet, that they first examined the packet after they took it to their attorney, and that examination revealed only one copy of the TILA Disclosure Statement. HSBC offered no testimony to the contrary. No one, other than Plaintiffs, who participated in the closing testified.

## C. HSBC IS NOT LIABLE FOR STATUTORY DAMAGES OR RELATED ATTORNEY FEES FOR THE ALLEGED FAILURE TO PROVIDE TWO COPIES OF THE TILA DISCLOSURE STATEMENT.

Debtors seek an award of statutory damages of $2,000 under § 1640(a)(2)(A)(iii),[13]

---

[12] *Cooper v. First Gov't Mortgage and Investors Corp.*, 238 F. Supp.2d at 64.

[13] 15 U.S.C. § 1640(a), before its amendment effective July 30, 2008, provided:

**(a) Individual or class action for damages; amount of award; factors determining amount of award**

Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, subsection (f) or (g) of section 1641 of this title, or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of —

**(1)** any actual damage sustained by such person as a result of the failure;

**(2)(A)** . . . (iii) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $200 or greater than $2,000; or . . . .

8

for the alleged failure to provide two copies of the TILA Disclosure Statement and attorney fees for such violation under § 1640(a)(3).  HSBC responds that Debtors' claim is barred by the one-year statute of limitations of § 1640(e).[14]  Here the alleged violation occurred at the closing in December 2005, and the Adversary Complaint was not filed until June 30, 2008, more than one year after the alleged violation.[15]  Therefore, the Court finds that the claim for statutory damages and fees for failure to provide two copies of the TILA Disclosure Statement is time barred.

The Court notes that even if the claim were not time barred, HSBC, as assignee, would have no liability for statutory damages for failure to provide two copies of the TILA Disclosure Statement since the violation was not apparent from the face of the loan file.  Section 1641, addressing liability of assignees, provides in relevant part:

---

**(3)** in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 or 1638(e)(7) of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court.

[14] 15 U.S.C. § 1640(e), as it read in December 2005, provided in part:

**(e) Jurisdiction of courts; limitations on actions; State attorney general enforcement**

Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, *within one year from the date of the occurrence of the violation*.  This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law.

(emphasis supplied).

[15] *Betancourt v. Countrywide Home Loans, Inc.*, 344 F. Supp. 2d 1253 (D. Colo. 2004) (one-year statute of limitations of 15 U.S.C. § 1540(e) commences to run when the credit is extended).

9

**(a)  Prerequisites**

Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter or proceeding under section 1607 of this title which may be brought against a creditor may be maintained against any assignee of such creditor *only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary.  For the purpose of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter.*[16]

HSBC can have no liability for statutory damages for failure to provide the correct number of copies because the signed TILA Disclosure Statement contained within the HSBC loan file does not reveal an "apparent" violation as to the number of copies of the form provided to Plaintiffs at the closing.  To the contrary, the signed copy of the TILA Disclosure Statement states that two copies were provided.  There is no evidence that HSBC as assignee had knowledge of the alleged violation.  Therefore, pursuant § 1641, HSBC, as assignee, would have no liability for statutory damages for the failure to provide the correct number of copies of the TILA disclosure, even if the claim were not time barred.

**D.  STATUTORY DAMAGES AND STATUTORY ATTORNEY FEES FOR ALLEGED IMPROPER RESPONSE TO PLAINTIFFS' ATTEMPTED RESCISSION CANNOT BE RECOVERED FROM HSBC UNDER THE AUTHORITY OF § 1640(a).**

Plaintiffs also seek under § 1640(a)(2)(A)(iii) to recover statutory damages and

---

[16] 15 U.S.C. § 1641(a) (emphasis supplied).

10

attorney fees for HSBC's allegedly inadequate response to the June 30, 2008 notice of

rescission sent to HSBC. In defense, HSBC relies upon the assignee defense of § 1641,

which the Court has found applies to the claim for statutory damages for the alleged

failure to provide the requisite number of copies of the TILA Disclosure Statement.

HSBC asserts that it is not apparent from the face of the file that Plaintiffs' right to

rescind was extended for three years because, under § 1641(b),[17] the signed

acknowledgment provided "conclusive proof" that the grounds for rescission were

lacking. Plaintiffs respond that since subsection (c) of § 1641[18] provides that a

consumer's right to rescind is not affected by assignment, subsections (a) and (b) of

---

[17] 15 U.S.C. § 1641(b) provides:

(b) Proof of compliance with statutory provisions

    Except as provided in section 1635(c) of this title, in any action or proceeding by or against any subsequent assignee of the original creditor without knowledge to the contrary by the assignee when he acquires the obligation, written acknowledgement of receipt by a person to whom a statement is required to be given pursuant to this subchapter shall be conclusive proof of the delivery thereof and, except as provided in subsection (a) of this section, of compliance with this part. This section does not affect the rights of the obligor in any action against the original creditor.

15 U.S.C. § 1635(c), referenced in § 1641(b), provides:

**(c) Rebuttable presumption of delivery of required disclosures**

    Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof.

[18] 15 U.S.C. § 1641(c) provides:

**(c) Right of rescission by consumer unaffected**

    Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation.

11

§ 1641 should not be construed to preclude statutory damages under the circumstances presented.

Courts are divided on this issue. HSBC cites *Brodo*,[19] a 1994 decision from Pennsylvania. In *Brodo*, the court granted summary judgment in favor of an assignee and against a consumer who claimed a statutory penalty and award of costs and attorney fees under the TILA based upon the assignee's failure to respond to the borrower's notice of rescission. No TILA violation was apparent on the face of the disclosures given by the lender. The court reasoned that even though "§ 1641 provides that the right to rescind exists even against a creditor's assignees, § 1640(a) permits only a 'creditor' [not an assignee] to be held liable for a monetary penalty or an award of attorney fees for a TILA violation."[20] Since neither § 1641 nor any other section of the TILA provides for a statutory penalty or fee award for failure to respond to a valid rescission notice, rescission was found to be the only remedy against the assignee to which the consumer was entitled. Many courts have reached the same conclusion as *Brodo*.[21] One court has stated:

> This court agrees . . . that an assignee cannot be subject to damages for failing to comply with a notice to rescind issued under § 1635 when the underlying basis for the rescission is a disclosure violation not apparent on the face of the disclosure statement. Section 1641(a) specifically limits assignee liability to violations apparent on the face of the disclosure statement. To suggest that an assignee can be

---

[19] *Brodo v. Bankers Trust Co.*, 847 F. Supp. 353 (E.D. Pa. 1994).

[20] *Id.*, at 359.

[21] *E.g., Briggs v. Provident Bank*, 349 F. Supp.2d. 1124, 1131 (N.D. Ill. 2004); *Dougal v. Saxon Mortgage (In re Dougal)*, 395 B.R. 880, 891 (Bankr. D. W.D. Pa. 2008).

> directly liable for damages for failing to comply with a demand for rescission that was based on a violation not apparent on the face of the document is . . . simply an end run around § 1641(a). An assignee (or the original creditor for that matter) is not automatically liable for a simple failure to comply with the rescission demand. Rescission is not automatic if the lender disputes the borrower's claim that rescission is warranted.[22]

Plaintiffs rely upon *Fairbanks Capital*,[23] a 2002 decision from Illinois which disagrees with *Brodo*. It enumerates four reasons for its position that a consumer who successfully rescinds a transaction against an assignee is entitled to a statutory penalty and attorney fees under § 1640 for failure to initiate rescission procedures upon receipt of the notice of rescission. First, the court reasoned that Congress intended for § 1640(a)'s remedies to apply to a creditor or assignee because if this were not the case there would have been no reason for Congress to include in § 1640(b) and (c) defenses to liability applicable to creditors and assignees. Second, the court found that § 1640(a) itself indicated that attorney fees, at least, are available from an assignee for violating the right to rescind because subsection (a)(3) provides: "'[I]n the case of any successful action to enforce the foregoing liability or in an action in which a person is determined to have a right of rescission under section 1635 of this section, the costs of the action, together with a reasonable attorney's fee as determined by the court' is available."[24] Third, § 1641(c) specifically allows rescission against any assignee, not just against the limited set of

---

[22] *Bills v. BNC Mortgage, Inc.*, 502 F. Supp. 2d 773, 776 (D.N.D. Ill. 2007).

[23] *Fairbanks Capital Corp. v. Jenkins*, 225 F.Supp. 2d 910 (D.N.D. Ill. 2002).

[24] *Id*. at 917 (emphasis omitted, quoting 15 U.S.C. § 1640(a)(3)).

13

assignees described in § 1641(a) and (e)(1). Fourth, the court found to hold that attorney fees are not recoverable "would undermine the policies underlying the TILA and its private enforcement mechanism."[25]

This Court finds the analysis of *Brodo* and similar cases persuasive and declines to follow *Fairbanks*. First, it appears that the *Fairbanks* court rejected the assignee's contention that the TILA violation was not apparent on the face of the transaction documents.[26] Therefore, unlike this case, the assignee was not protected by § 1641. Second, this Court is not persuaded by the reasoning of the *Fairbanks* court. As to the *Fairbanks* court's first argument, § 1640(a) provides for the recovery of statutory damages and attorney fees from a "creditor who fails to comply" with Part B of the TILA, §§ 1631 through 1665e, including § 1635, rescission. "Creditor" is defined by § 1602(f) in part as the "person to whom the debt arising from the consumer transaction is initially payable on the face of the evidence of indebtedness." In this case, the evidence conclusively establishes that HSBC is not a "creditor" as defined by the TILA. As noted above, § 1641(a) provides that a civil action for violation of "this subchapter" (§§ 1601 through 1667f) may be maintained against an assignee only if the violation is apparent on the face of the disclosure statement, unless the assignment was involuntary. The plain reading of these statutes is that the remedies of § 1640(a) do not apply to assignees in the position of HSBC. This Court finds that the *Fairbanks* court's construction of § 1640(a)

---

[25] *Id*. at 917.

[26] *Id*. at 915.

is inconsistent with the statutory language. As to the second argument, since not all assignees are protected by § 1641, the references to assignees in § 1640 (b) and (c) do not indicate congressional intent to make assignees protected by § 1641 liable under § 1640(a). Likewise, the right to recover fees in rescission actions stated in § 1640(a)(3) is subject to the introductory phrase of § 1640(a) limiting recovery to "creditors" who fail to comply with the TILA. The *Fairbanks* court's third and fourth arguments are based upon the fact assignee status does not affect a consumer's right to rescind under § 1635. But the existence of this right does not effect an expansion of the remedies of § 1640(a), which are expressly limited to "creditors."

The Court therefore finds that HSBC is not liable under § 1640 (a) for a statutory penalty or an award of attorney fees for failure to grant rescission in response to the notice of rescission. HSBC is not a "creditor" for purposes of § 1640(a). Since the violation which is the basis for rescission was not apparent on the face of the loan documents, HSBC is protected by the assignee defense of § 1641.

Moreover, there is no alternative basis to award attorneys fees. This Court agrees with the observation of the *Fairbanks* court that the award of fees to a successful consumer in a TILA rescission action promotes the private enforcement mechanism of the TILA. To hold fees may never be recovered in a rescission action against an assignee where the violation is not apparent on the face of the documents, because of the wording of § 1640(a), appears contrary to the congressional intent expressed in the TILA as whole. Section 1641(c) provides "any consumer who has a right of rescission under section 1635

15

of this title may rescind the transaction as against any assignee of the obligation." However, § 1635(b), providing the procedures for return of money or property following rescission, makes no reference to the recovery of fees. The Tenth Circuit has held that *Alyeska Pipeline*[27] forecloses an award of fees for a TILA violation, absent a statutory basis for the fee award.[28] This Court therefore cannot award fees based upon the authority granted by § 1635(b) to alter the rescission procedures.

### E.  THE APPLICABLE RESCISSION PROCEDURES.

As stated above, in transactions such as this, involving a non-purchase-money loan secured by the borrowers' principle residence, there is a right to rescind when one copy of the TILA disclosure statement is not delivered to *each* of the consumer borrowers at the closing. The failure to conform to the TILA requirements imposes strict liability, so the creditor's lack of knowledge of the violation and good faith in responding the rescission notice are not relevant. As stated in § 1641(c), assignees are subject to rescission.

Section 1635(a) creates the right of rescission in this case, and § 1635(b) sets forth the effect of rescission and the applicable procedures. It provides in part:

> When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination

---

[27] *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240 (1975).

[28] *Rachbach v. Cogswell*, 547 F.2d 502, 506 (10th Cir. 1976).

> of any security interest created under the transaction. . . . Upon the
> performance of the creditor's obligations under this section, the obligor shall
> tender the property to the creditor. . . . The procedures prescribed by this
> subsection shall apply except when otherwise ordered by a court.[29]

Thus, when a transaction is rescinded under the TILA, (1) the consumer is not liable for any finance or other charges, (2) any security interest granted by the consumer is void, and (3) the consumer must tender to the creditor the funds advanced.  Under the TILA, the foregoing are to be accomplished in the order stated — the lender must first return the payments made by the consumer and void the lien securing its debt before the consumer tenders the funds advanced.

These procedures are the same for all rescissions, both those occurring during the three-day period at the sole discretion of the consumer and those occurring during the three-year extended period because of violations of TILA by the lender.  When applied to transactions rescinded during the three-day period, these remedies which require the creditor to perform first by returning any property and voiding the security interest, present few problems since the TILA requires creditors to delay their own contractual performance until the three-day rescission period has expired.[30]  However, during the extended cancellation period, the lender has performed, funds have been advanced, and the mortgage has been recorded.  Creditors are understandably reluctant to return property and release liens on property without the consumer having tendered the funds advanced.

---

[29] 15 U.S.C. § 1635(b).

[30] 12 C.F.R. §§ 226.15(c) and 226.23(c).

17

Consequently in such cases, courts frequently exercise their ability to modify the procedures of § 1635(b).

In this district, both the District Court and Bankruptcy Court have had occasion to address the extent of a court's authority to modify the statutory rescission procedures. The parties in this case do not challenge the analysis of these courts. Bankruptcy Judge Berger in *Stanley* held that "voiding of a security interest is one of the procedures that may be equitably modified to effect rescission,"[31] such that the voiding of the mortgage lien need not be effective upon the creditor's receipt of the notice of rescission. He observed in bankruptcy if the lien were automatically void, the creditor's claim would be relegated to unsecured, often dischargeable, status; the consumer would receive the full benefit of the transaction, substantial money or a free house, while the creditor would receive nothing. This was labeled an "irrational result" that failed to recognize the "full policy and scope of the TILA's rescission framework."[32] The facts and circumstances of each case must be considered to determine whether deviation from the TILA's statutory scheme is warranted.[33]

District Judge Robinson in *Ramirez*,[34] when considering an appeal from a bankruptcy court decision in a Chapter 13 case, agreed that "rescission is not automatic

---

[31] *Stanley v. Household Finance Corp. III (In re Stanley)*, 315 B.R. 602, 615 (Bankr. D. Kan. 2004).

[32] *Id.* at 616.

[33] *Id.*

[34] *Ramirez v. Household Finance Corp. III (In re Ramirez)*, 329 B.R. 727 (D. Kan. 2005).

18

upon the exercise of the right to rescind by giving notice."[35] She further held "that a court has authority to condition voiding of the security interest on satisfaction of payment by the borrower."[36] The payments made by the consumer to the creditor, which the creditor has no right to retain after rescission, are often offset against the principal of the loan, yielding a net tender amount owed by the consumer to the creditor.[37] A court may order that this tender amount is secured by the mortgage lien until paid.[38]

The Court next addresses the elements of rescission which apply in this case. The first procedure in rescission is that the lender has no right to any finance charges or other charges paid by the consumer with respect to the transaction. In this case, payments made by Debtors pursuant to the loan are: Closing costs of $13,457.42; interest payments from February 2006 through August 2008 of $112,297.50; late charges of $1,086.78; and other charges of $10. These total $126,851.70. There is no escrow balance. Pursuant to § 1635(b), upon rescission, HSBC has no right to these payments, which must be returned to Plaintiffs.

The second element of rescission is voiding of the lien securing the loan. Pursuant to the TILA, a security interest is not automatically voided upon the consumer's exercise

---

[35] *Id*. at 737.

[36] *Id*.

[37] *Id*. at 734.

[38] *Id*. at 743.

Case 08-06095   Doc# 53   Filed 09/07/10   Page 19 of 22

of the right to rescind,[39] and, as discussed above, "[v]oiding a security interest is one of the procedures that may be modified to effect rescission."[40]  In this case, Defendant HCBC urges, and Debtors do not oppose, an order that the voiding of the mortgage lien on Debtors' home be conditioned upon their payment to HSBC of the funds to be returned to restore the status quo, pursuant to the third element of the rescission procedure.[41]

The third element of the rescission procedure is the consumer's tender to the lender of the property advanced by the lender.  In this case, the amount advanced was $644,000.  When determining the rescission procedures, courts frequently offset the amount owed by the creditor against the amount advanced.  In this case, the total tender required is therefore $644,000 less $126,851.70, or a total of $517,148.30.

Debtors request at least one year in which to make tender, during which time they will attempt to sell the Property, since they do not wish to refinance.  HSBC submits that one year is excessive under the circumstances and that Debtors should be ordered to tender one lump sum or vacate the premises within 20 days.  By virtue of the rescission, Debtors will have been living in the home, which they valued in their schedules at $900,000, since December 2005 without paying any interest, even though $644,000 was advanced by HSBC's predecessor to refinance Debtors' mortgage loan.  The TILA

---

[39] *Id.* at 737.

[40] *Stanley*, 315 B.R. at 616.

[41] *See Ramirez*, 329 B.R. at 737.

20

noncompliance which is the basis for rescission is a technical failure to provide two copies of the TILA Disclosure statement, which caused no harm or prejudice to Debtors. HSBC is the assignee of the note and mortgage and bears no fault for the TILA violation. The Court finds that the equities lie with HSBC.

The Court therefore orders the rescission procedures shall be as follows:

1. That Debtors shall have up to 14 days from the date of this order to tender $517,148.30 to HSBC in one lump sum or, if they wish to extend the tender period to 120 days from the date of this order, within 14 days from the date of this order, they shall execute a quitclaim deed conveying their interest in the Property located at 12509 Sherwood Drive, Leawood, KS 66209 to HSBC and deliver the quitclaim deed to counsel for HSBC, who shall hold the deed in accord with this order.

2. If the deed is delivered as provided in paragraph 1, Debtors shall have up to 120 days from the date of this order to tender $517,148.30 to HSBC in one lump sum;

3. During the tender period, the existing mortgage lien on the Property located at 12509 Sherwood Drive, Leawood, KS 66209 securing HSBC's claim shall remain in place to secure the tender amount, Debtors shall pay interest monthly to HSBC on $517,148.30 at the contract rate, and Debtors at their own expense shall insure the Property in accord with the requirements of the Transaction documents;

4. If the tender amount is paid to HSBC in one lump sum within the time limits established above, HSBC shall promptly release the mortgage securing its claim and deliver the quitclaim deed to the Property to Debtors' counsel, if such deed was

previously delivered to HSBC's counsel; and

5.  If the tender is not timely made, Debtors shall promptly vacate the Property, Debtors shall deliver to counsel for HSBC a quitclaim deed conveying their interest in the Property to HSBC, if such a deed was not previously delivered to counsel for HSBC, and counsel for HSBC shall seek direction from this Court regarding delivery of the quitclaim deed to HSBC.

**CONCLUSION.**

For the foregoing reasons, the Court holds that pursuant to the TILA, specifically § 1635, Plaintiffs may rescind the December 2005 Transaction refinancing their home mortgage loan pursuant to the procedures stated above.  Plaintiffs are not entitled to recovery of statutory damages or attorney fees.

The foregoing constitute Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure which makes Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter.  A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 7058 and Federal Rule of Civil Procedure 58(a).

**IT IS SO ORDERED.**

### #